## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Aditya R. Sharma,<br><br>                    Plaintiff,<br><br>v.<br><br>Crosscode, Inc., CodeLogic, Inc.,<br>Greg Wunderle, Rahul Gandhi,<br>Robert Clifford, Keith Archer,<br>Emily Wang Fairbairn, Robert<br>Levy, and Brian Cullinan,<br><br>                    Defendants. | Case No. 21-cv-01766 (SRN/BRT)<br><br><br><br>**ORDER** |

Aditya R. Sharma, 17285 74th Ave. N., Maple Grove, MN 55311, Pro Se Plaintiff.

Robert J. Gilbertson and Virginia R. McCalmont, Forsgren, Fisher, McCalmont, DeMarea, Tysver, LLP, Capella Tower, 225 S. 6th St., Ste. 1750, Minneapolis, MN 55402; Elizabeth Brannen, Stris & Maher LLP, 777 S. Figueroa St., Ste. 3850, Los Angeles, CA 90017, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 6] and Motion for Rule 11 Sanctions/Declaring Plaintiff a Vexatious Litigant [Doc. No. 32], and Plaintiff's Motion for Sanctions and Demand for Criminal Prosecution [Doc. No. 41]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants Defendants' Motion to Dismiss, grants in part and denies in part Defendants' Motion for Rule 11 Sanctions/Declaring Plaintiff a Vexatious Litigant, and denies Plaintiff's Motion for Sanctions and Demand for Criminal Prosecution.

## I.      BACKGROUND

### A.      Allegations in this Case

Plaintiff Aditya Sharma ("Sharma"), a Minnesota resident, is the former president, CEO, and chairman of the board of Defendant Crosscode, Inc. ("Crosscode"), an information technology company.  (Compl. [Doc. No. 1 [¶ 28.)  Crosscode and its successor, Defendant CodeLogic, Inc. ("CodeLogic"), are Delaware corporations with their principal places of business in California.  (*Id*. ¶ 29.)  The individuals whom Sharma names as defendants (the "Individual Defendants") are current or former Crosscode or CodeLogic executives or board members.  (*Id*. ¶¶ 28–36.)  As to the Individual Defendants, Greg Wunderle is a resident of Ohio; Robert Levy is a resident of Illinois; and Rahul Gandhi, Robert Clifford, Keith Archer, Emily Wang Fairbairn, and Brian Cullinan are residents of California.  (*Id*.)

Sharma broadly accuses Defendants of engaging in "rampant corporate fraud" and "unleashing a campaign of violence and harassment in an effort to intimidate anyone associated with [him]."  (*Id* ¶ 1.)

He contends that while working at Crosscode, he developed certain information technology mapping software that resulted in a software program called "Panoptics."  (*Id*. ¶ 2.)  He describes Panoptics as "essentially the nucleus of Crosscode's business."  (*Id*.) In order to increase the potential commercial success of Panoptics, in February 2019, Sharma engaged in discussions with non-party Liquid Ventures Partners ("LVP"), an investment bank, about a private-placement securities offering to raise capital for Crosscode.  (*Id*.)  The private placement closed in May 2019.  (*Id*.)  Sharma alleges,

however, that unbeknownst to him, LVP was "masquerading as a legitimate investment company," and was part of a criminal organization engaged in corporate takeovers, shareholder divestment, and embezzlement.  (*Id*. ¶ 3.)

As part of LVP's "strategy," Sharma alleges that in November 2019, Crosscode wrongfully terminated his employment as president and removed him from its board of directors.  (*Id*. ¶¶ 4–5.)  Sharma further contends that LPV then "reconstituted" Crosscode's board of directors with its own associates.  (*Id*. ¶ 6.)

Sharma also alleges that he and Defendants previously were parties to litigation in this District and in the Northern District of California concerning whether Sharma had licensed Panoptics to Crosscode through an IP licensing agreement, whether he possessed the authority to prevent Crosscode from using the intellectual property, and whether Defendants had harassed and pressured Crosscode's lead software developer and Indian national, Ajay Singh, in an effort to invalidate the purported IP licensing agreement.  (*Id*. ¶¶ 8–12, 48–51, 61–70.)

Further, Sharma contends that in December 2019, Defendants' attorneys guided Defendants in "stag[ing] [Crosscode's] fraudulent bankruptcy" proceeding in the Northern District of California.  (*Id*. ¶¶ 12–13.)

As part of Defendants' alleged scheme of fraud and harassment, Plaintiff asserts that they have continued to use his residential mailing address as the official business address for Crosscode or CodeLogic, causing him to suffer harassment and "possibly face additional liens."  (*Id*. ¶ 19.)  For instance, he contends that in March 2020, the IRS placed a lien on his residence because Crosscode or CodeLogic had failed to pay federal taxes,

and unlawfully associated their business with Sharma's residential address.  (*Id*. ¶¶ 18–19.) Sharma also alleges that despite his demands that Defendants cease using his residential address as their business address, he has received no confirmation that the issue has been remedied, nor has the IRS removed the lien on his property.  (*Id*. ¶¶ 78–79.)

Sharma filed this lawsuit in August 2021, seeking the following relief:  (1) a permanent restraining order preventing Defendants from using his residence for any business purpose; (2) injunctive relief that "awards him . . . no less than [\$3.6 million] for a minimum of 36 counts of Mail Fraud"; (3) a declaratory judgment "convicting" Defendants for mail fraud; and (4) a declaratory judgment directing the U.S. Attorney's Office to prosecute non-party opposing counsel in other legal actions involving Sharma for "manipulating the U.S. legal system for illegal gains," and "indulging in fraudulent practices."  (*Id*. ¶¶ 76–97.)

### B.    Other Litigation

In addition to this lawsuit, Sharma has been involved in related litigation.  In January 2020, Crosscode filed suit against Sharma in the Northern District of California, seeking a judgment declaring the purported IP licensing agreement invalid.  (*See* McCalmont Decl. [Doc. No. 9], Ex. C (*Crosscode Inc. v. Sharma*, No. 3:20-cv-00104-VC (N.D. Cal. Mar. 3, 2020 Order) at 1.)  The court granted Crosscode's motion for a preliminary injunction and found that Sharma had likely "fabricated" the licensing agreement and had "intentionally destroyed relevant evidence."  (*Id*. at 7.)  It further found Sharma's allegation of an attack on a Crosscode employee in India, Ajay Singh, to be "fanciful," and contradicted by an

affidavit from Mr. Singh. (*Id.*) The court concluded that Sharma's "representations seem to be false and designed to manipulate the legal process." (*Id.*)

After Crosscode filed suit in the Northern District of California, and while its motion for a preliminary injunction was pending, Sharma and his wife, Dr. Anshu Sharma, filed a lawsuit in this District, also related to the purported IP licensing agreement. (McCalmont Decl., Ex. A (*Sharma v. Crosscode*, No. 20-cv-436 (PJS/TNL), (D. Minn. Compl.).) Judge Patrick J. Schiltz stayed the matter pending resolution of Crosscode's preliminary injunction motion in the Northern District of California. (*Id.*, Ex. B (*Sharma v. Crosscode*, No. 20-cv-436 (PJS/TNL), (D. Minn. Feb. 19, 2020 Order) at 10–11.) In addition, Judge Schiltz denied the Sharmas' motion for a temporary restraining order, as he was unable to assess the likelihood of success of their claims because he found that they failed to plead a cognizable claim.[1] (*Id.* at 12–13.)

Separately, in April 2020, Sharma's wife filed a civil lawsuit against Crosscode in Minnesota state court, alleging claims for breach of contract and unjust enrichment, which Crosscode removed to federal court.[2] *Sharma v. Crosscode, Inc.*, 20-cv-1042 (DSD/BRT).

Shortly after the filing of the California and Minnesota lawsuits, Crosscode filed for Chapter 11 bankruptcy in the Northern District of California (the "Bankruptcy Court"), in

---

[1] The Court ultimately dismissed this action in response to the Sharmas' notice of voluntary dismissal. *Sharma v. Crosscode*, 20-cv-436 (PJS/TNL) (Order [Doc. No. 29]; Notice of Dismissal [Doc. No. 30].

[2] The Court also dismissed Dr. Sharma's lawsuit pursuant to the parties' stipulation. *Sharma v. Crosscode, Inc.*, 20-cv-1042 (DSD/BRT) (Order Dismissing Case [Doc. No. 11]; Stipulation [Doc. No. 10].

May 2020.   The Sharmas filed several proofs of claim against Crosscode, which the company disputed.  (McCalmont Decl. Ex. D (Mot. to Approve) at 16.)  Ultimately, the Sharmas and Crosscode entered into a settlement agreement (the "Settlement Agreement"). (McCalmont Decl., Ex. D (Mot. to Approve); *id*., Ex. E (Order Approving Settlement).) Pursuant to the Settlement Agreement, and as relevant to Mr. Sharma's claims here, he relinquished his preferred stock, and also released all claims against Crosscode (including claims against its officers, directors, agents, attorneys, and successors) related to his employment, investments, and termination, and any claim that was or could have been asserted in the California, Minnesota, and bankruptcy proceedings.  (McCalmont Decl., Ex. D (Mot. to Approve) at 16–17.)  In addition, Sharma agreed to release Crosscode (including its officers, directors, agents, attorneys, and successors) and forever discharge it from any actions or liabilities arising on or before the "Bankruptcy Approval Motion Final Order Date."  (*Id*.)  The Bankruptcy Court approved the settlement in August 2020, and the settlement became effective on September 12, 2020.  (McCalmont Decl., Ex. E (Order Approving Settlement) at 1); *id*., Ex. D (Mot. to Approve) at 23, ¶ 9(a).)

As Crosscode's bankruptcy proceedings proceeded toward resolution, in November 2020, the Bankruptcy Court approved and confirmed Crosscode's  Third Amended Chapter 11 Plan of Reorganization ("the Plan").  (McCalmont Decl. Ex. G (Findings of Fact & Confirm. Order).)   As of the Plan's effective date, December 10, 2020, the Bankruptcy Court released Crosscode and "Reorganized Crosscode" (known as CodeLogic) with respect to claims related to Crosscode's bankruptcy or its liabilities and "causes of action of any nature whatsoever," and enjoined anyone from pursuing such claims against

6

Crosscode as of December 10, 2020. (McCalmont Decl., Ex. G (Findings of Fact & Confirm. Order) at 19, ¶¶ 18–19; *see also id.*, Ex. F (Third Am. Plan) § 5.1 (stating that all persons are barred from asserting against Crosscode and Reorganized Crosscode any cause of action that occurred or existed prior to the effective date).) In addition, as part of the approved Plan, all common stock in Crosscode was cancelled, (McCalmont Decl., Ex. G (Findings of Fact & Confirm. Order) at 16, ¶ 8(b)), and CodeLogic would have no successor liability for Crosscode. (*Id.* at 22, ¶ 21.)

Finally, in addition to the numerous civil actions and bankruptcy proceedings, in November 2020, Sharma was criminally indicted on one count of wire fraud, in violation of 18 U.S.C. § 1343. *United States v. Sharma*, 20-cr-261 (DSD/TNL) (D. Minn. 2020 Indictment [Doc. No. 1].) In July 2021, Plaintiff pleaded guilty to the charge, and admitted to having fraudulently obtained over $1.7 million in loans through the Paycheck Protection Program, which were intended to provide economic relief to small businesses impacted by the COVID-19 pandemic. (McCalmont Decl., Ex. L (*United States v. Sharma*, 20-cr-261 (DSD/TNL) Plea Agmt.).) The Court sentenced Sharma to a term of imprisonment of 60 months. *United States v. Sharma*, 20-cr-261 (DSD/TNL) (Mar. 9, 2022 Minutes [Doc. No. 98].)

Shortly after Sharma's sentencing hearing, he filed a "Notice of Continuance" [Doc. No. 45] in this case, notifying the Court and Defendants of "certain key developments" pertaining to this case. (Notice at 1.) He noted that although he was sentenced to prison, "the current case will not be withdrawn, and the Plaintiff will fight it to the end from prison, if needed, or assign [it] to a different counsel." (Notice at 1.)

In response to Sharma's "Notice of Continuance," to the extent that Sharma seeks a continuance, Defendants oppose any such request. (Defs.' Mar. 15, 2022 Letter [Doc. No. 46] at 1.) In addition, they contend that Sharma's threat to "fight [this case] to the end," along with comments he made to that effect during his sentencing hearing, confirm the appropriateness of declaring Sharma a vexatious litigant or, at a minimum, require him to seek Court approval before filing any action "against Crosscode, CodeLogic, or any affiliated parties, including (but not limited to) current and former officers, directors, employees, counsel, agents, bankers, and investors." (*Id.*)

### C.    Pending Motion to Dismiss and Motions for Sanctions

As noted, currently before the Court are Defendants' Motion to Dismiss, and the parties' cross motions for sanctions.

In their Motion to Dismiss, Defendants argue that the Court lacks subject matter jurisdiction because Sharma has not alleged in good faith an adequate amount in controversy. (Defs.' Mem. Supp. Mot. to Dismiss [Doc. No. 8] at 16–17.) In addition, Defendants contend that the Court lacks personal jurisdiction over the Individual Defendants. (*Id.* at 17–21.)

Even if Sharma could overcome these jurisdictional infirmities, Defendants argue his Complaint should be dismissed for failure to state a claim for several reasons: (1) his claims are barred by the Settlement Agreement and the Bankruptcy Court's approval of the settlement and of Crosscode's Chapter 11 Plan; (2) there is no private civil cause of action for mail fraud, which Sharma alleges in Counts 1 through 3 of the Complaint; (3) Count 4 states no cognizable legal theory and is directed at non-parties; (4) Plaintiff's breach of

8

fiduciary duty claim is premised on the same non-actionable mail fraud allegations as in Counts 1 through 3, it fails to meet the heightened pleading standard for claims based on fraud, and it fails to plausibly allege that Defendants owed Plaintiff a fiduciary duty; and (5) the Court should strike much of the Complaint as scandalous, impertinent, and immaterial.  (*Id*. at 15–33.)  Further, Defendants argue that dismissal should be with prejudice, and Sharma should not be granted leave to amend because he has not proceeded in good faith, and even meritless litigation is harmful to CodeLogic.  (*Id*. at 34–35.)

Defendants also move for monetary sanctions against Sharma pursuant to Federal Rule of Civil Procedure 11.  (Defs.' Mem. Supp. Sanctions [Doc. No. 34] at 22.)  In addition, they seek an order declaring Sharma a vexatious litigant and requiring him to obtain approval prior to filing any future action against them.  (*Id*. at 18–21.)

Sharma, in turn, moves for Rule 11 sanctions against Defendants.  He contends that Defendant Fairbairn knowingly submitted false declarations in this action and committed perjury.  (Pl.'s Mem. Supp. Sanctions [Doc. No. 41].)  In addition, he requests that the Individual Defendants and their legal counsel be criminally prosecuted based on the alleged perjury and the individuals' roles as "accomplices."  (*Id*. at 7–11.)

## II.   DISCUSSION

### A.   Dismissal for Lack of Jurisdiction Under Rule 12(b)(1)

#### 1.   Amount in Controversy

Sharma asserts subject matter jurisdiction in this case based on diversity of citizenship. (Compl. ¶ 37.) Defendants argue, however, that the Court lacks subject matter jurisdiction because Plaintiff fails to plead in good faith the threshold amount in

controversy.  (Def.'s Mem. Supp. Mot. to Dismiss at 16.)  Defendants contend that the amount pled has no basis in the law.  (*Id.*)

The requirements for diversity jurisdiction are governed by 28 U.S.C. § 1332(a)(1), which provides, in relevant part, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different states."

A party may challenge subject-matter jurisdiction on the face of the complaint or by challenging the factual truth of the allegations.  *See Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  With respect to a factual attack, the court may consider "matters outside the pleadings, such as testimony and affidavits," whereas with a facial attack, the court looks to the pleadings to consider whether the plaintiff has alleged a sufficient basis for jurisdiction and accepts all factual allegations as true.  *Id.* at 914-15 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

Defendants present a facial attack on the pleadings.  In the face of such an attack, "the plaintiff must establish jurisdiction by a preponderance of the evidence."  *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc.*, 912 F.3d 1076, 1080 (8th Cir. 2019).

As a general matter, a complaint need only allege the jurisdictional amount in good faith, and it is subject to dismissal only if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount."  *Id.* (citations omitted).  The "legal certainty" standard is met "when the impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim."  *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011) (cleaned up).

Sharma argues that he has met the amount-in-controversy requirement because the total criminal monetary penalties for all of the alleged instances of mail fraud would exceed $75,000. (Pl.'s Opp'n to Mot. to Dismiss [Doc. No. 26] at 4.) He also argues that he is seeking $4 million in damages for the breach of the Settlement Agreement between Sharma and Crosscode in Bankruptcy Court. (*Id.*) Finally, Sharma argues for the first time that he meets the statutory dollar amount by seeking $10 million in damages for "emotional distress, harassment and financial losses to his two companies KloudGaze, Inc. and Neoforma, Inc." (*Id.*)

The Court finds that Plaintiff has failed to establish subject matter jurisdiction. Rather, it appears "to a legal certainty" that Sharma's claims cannot reach the $75,000 threshold required for diversity jurisdiction, for several reasons. *Am. Fam. Mut. Ins.*, 912 F.3d at 1080.

First, as the Court discusses in greater detail in its analysis of Defendants' Rule 12(b)(6) arguments, Sharma cannot use this civil action to sue for criminal penalties authorized under criminal statute 18 U.S.C. § 1341, and criminal penalties do not meet the amount-in-controversy requirement, in any event, which applies only to "civil actions." 28 U.S.C. § 1332(a). None of Sharma's purported causes of action provide a means for obtaining monetary relief, including his claim for breach of fiduciary duty, which is premised upon the individual Defendants' alleged underlying mail fraud. Thus, even if these allegations were made in good faith, there is no basis for damages "to a legal certainty." *See Schubert*, 649 F.3d at 822.

Second, as to Sharma's argument regarding $4 million in damages for the breach of the Settlement Agreement, he has asserted no such claim in this lawsuit.[3]

Finally, with respect to his assertion that $10 million in damages are at issue based on injuries incurred by non-party entities KloudGaze, Inc. and Neoforma, Inc., any alleged damages of non-parties are not part of the "matter in controversy." *See Nat'l Consumers League v. Flowers Bakeries, LLC.*, 36 F. Supp. 3d 26, 33 (D.D.C. 2014) (holding that claims of non-party consumers did not count toward the amount-in-controversy requirement); *see also State Farm Mut. Auto Ins. Co. v. McQuinn*, No. 16-6116-cv-SJ-REL, 2017 WL 6403027, at *2 (W.D. Mo. Jan. 30, 2017) (stating that a non-party's alleged damages are "not relevant to the amount in controversy.").

Accordingly, the Court finds that Plaintiff fails to adequately plead the amount-in-controversy threshold in order to satisfy subject matter jurisdiction under 28 U.S.C. § 1332. Defendants' Motion to Dismiss is therefore granted on this basis.

### 2.     Personal Jurisdiction Over the Individual Defendants

As noted, Defendants also argue that the Complaint must be dismissed because the Court lacks personal jurisdiction over the Individual Defendants.  (Def.'s Mem. Supp. Mot. to Dismiss at 17–22.)  In response, Sharma primarily focuses on venue and the Minnesota

---

[3]     Moreover, it appears that he would have to bring any such claim in the U.S. Bankruptcy Court for the Northern District of California, pursuant to the terms of the Settlement Agreement.  (McCalmont Decl., Ex. D (Mot. to Approve) at 23) ("The parties agree that any disputes with respect to this Settlement Agreement or the enforcement thereof, including with regard to its negotiation and execution, shall be brought in the Bankruptcy Court.").

contacts of Crosscode, CodeLogic, and his own non-party companies KloudGaze and Neoforma. (Pl.'s Opp'n to Mot. to Dismiss at 5.) With respect to the Individual Defendants, he appears to argue that personal jurisdiction is satisfied because they "are all officers and directors of Crosscode and now its successor, Codelogic." (*Id.*)

"[T]o survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). The plaintiff must allege sufficient facts to "support a reasonable inference that the defendant[] can be subjected to jurisdiction within" Minnesota. *Datalink Corp. v. Perkins Eastman Architects, P.C.*, 33 F. Supp. 3d 1068, 1071 (D. Minn. 2014) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alterations in original). When analyzing personal jurisdiction, the court may rely on the pleadings, as well as any affidavits and exhibits submitted in support of or in opposition to the motion. *See Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 745 (8th Cir. 2011); *K-V Pharm.*, 648 F.3d at 592 (noting that the plaintiff's showing of jurisdiction may be informed by the pleadings, along with supporting or opposing affidavits and exhibits). The Court reviews the evidence in the light most favorable to the plaintiff, and will resolve all factual conflicts in the plaintiff's favor. *K-V Pharm.*, 648 F.3d at 592. While "[t]he evidentiary showing required at the prima facie stage is minimal," *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (internal quotation marks omitted), the plaintiff still bears the burden of making that showing. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

Personal jurisdiction over a nonresident defendant is only proper if certain state and constitutional requirements are satisfied. *Datalink Corp.*, 33 F. Supp. 3d at 1072. First, the facts presented must comport with "the requirements of the forum state's long-arm statute," and second, the exercise of jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Pangaea, Inc.*, 647 F.3d at 745. Because the Minnesota Supreme Court has found Minnesota's long-arm statute "to be co-extensive with the limits of due process," the Court evaluates whether the exercise of jurisdiction comports with the requirements of due process. *Datalink Corp.*, 33 F. Supp. 3d at 1072 (citations omitted). "Due process requires that a non-resident have minimum contacts with the forum state such that the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *Fastpath*, 760 F.3d at 820 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)).

A court may exercise personal jurisdiction over litigating parties either under a theory of specific or general jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 582 U.S. ----, 137 S. Ct. 1773, 1780 (2017). However, "only a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In order for a court to exercise general jurisdiction over a defendant, the defendant must have "continuous and systematic" contacts with the forum such that they are "essentially at home" in the forum. *See id.* at 127 (quoting *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  For an individual defendant to meet the "at home" requirement, the paradigm forum is the individual's domicile.  *Id.* at 137.

Specific personal jurisdiction, however, "is very different" from general personal jurisdiction.  *Bristol–Myers Squibb*, 137 S. Ct. at 1780.  In order for a court to exercise specific jurisdiction, "the *suit* must arise out of or relate to the defendant's contacts with the forum."  *Id.*  (emphasis original, citations, and alternations omitted).  "For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Id.*  (quoting *Goodyear*, 564 U.S. at 919).

The Eighth Circuit has identified five factors for district courts to consider when assessing a defendant's minimum contacts with the forum:  (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relationship between the cause of action and the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.  *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (citing *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020)).  The first three factors are of "primary importance," *id.*, with the third factor particularly relevant to the question of specific jurisdiction.  *Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd.*, 89 F.3d 519, 523 n.4 (8th Cir. 1996).  However, the five-factor test "is not to be mechanically applied."  *Pangaea*, 647 F.3d at 746 n.4 (citation omitted).

Because Sharma has not clarified which theory applies to the Individual Defendants, this Court considers both in turn.

### a.   General Personal Jurisdiction

Again, this Court may only exercise general jurisdiction over defendants who have "continuous and systematic" contacts with the State of Minnesota such that they are "essentially at home" in Minnesota. *See Daimler AG*, 571 U.S. at 127 (quoting *Goodyear*, 564 U.S. at 919).

Nothing indicates that any of the Individual Defendants here have such contacts with Minnesota. While Sharma alleges that the Court has diversity jurisdiction over Defendants because they are citizens of different states and the amount in controversy exceeds $75,000, (Compl. ¶ 37), such allegations pertain to the Court's subject matter jurisdiction, not personal jurisdiction. *See* 28 U.S.C. § 1332 (noting elements necessary for subject matter jurisdiction). They do not pertain to personal jurisdiction.

In fact, the Complaint lacks any allegations regarding the Individual Defendants' contacts with Minnesota. To the contrary, as Sharma acknowledges and the Individual Defendants attest, none of them live in Minnesota. (*See* Compl. ¶¶ 28–36; Archer Decl. [Doc. No. 10] ¶¶ 5, 7; Clifford Decl. [Doc. No. 11] ¶¶ 5, 7; Cullinan Decl. [Doc. No. 12] ¶¶ 5, 7; Fairbairn Decl. [Doc. No. 13] ¶¶ 5, 7; Supp'l Fairbairn Decl. [Doc. No. 30] ¶ 5; Gandhi Decl. [Doc. No. 14] ¶¶ 2, 5–8; Levy Decl. [Doc. No. 15] ¶¶ 6, 8; Wunderle Decl. [Doc. No. 16] ¶¶ 4, 6–7.) Nor do they work, own property, or maintain bank accounts in Minnesota; nor have they registered to vote here, submitted to personal jurisdiction, or otherwise sought the benefits of residency in Minnesota. (*See* Wunderle Decl. ¶¶ 3–6; Clifford Decl. ¶¶ 4–6; Archer Decl. ¶¶ 4–6; Fairbairn Decl. ¶¶ 4–6; Levy Decl. ¶¶ 5–7; Cullinan Decl. ¶¶ 4–7; Gandhi Decl. ¶¶ 4–6.)

Five of the Individual Defendants have visited Minnesota no more than once in the last ten years, if ever. (*See* Clifford Decl. ¶ 7; Archer Decl. ¶ 7; Fairbairn Decl. ¶ 7; Supp'l Fairbairn Decl. ¶ 5; Levy Decl. ¶ 8; Cullinan Decl. ¶ 8.) The remaining two defendants have traveled to Minnesota very infrequently. Gandhi visited Minnesota twice in the past five years—once in 2019 to attend a Crosscode meeting in Minneapolis, and the other time, in 2020, to attend a mediation on behalf of Crosscode in *Crosscode v. Sharma*, No. 3:20-cv-00104-JSC, then pending in the Northern District of California, because Sharma was unable to travel outside of Minnesota. (Gandhi Decl. ¶ 8.) Like Gandhi, Wunderle visited Minnesota to attend the same mediation session in 2020, and visited Minnesota on two other occasions in the last five years. (Wunderle Decl. ¶ 7.) On one visit, he attended a sales meeting for three to four days, and on the other occasion, he attended a one-day software development conference. (*Id*.) While Wunderle and Gandhi have worked for Crosscode, they have primarily worked from home or on the road. (Wunderle Decl. ¶6; Gandhi Decl. ¶ 7.)

In opposition to the Motion to Dismiss, Sharma argues that jurisdiction is proper because Crosscode and CodeLogic are authorized to do business in Minnesota, have registered agents for service of process in Minnesota, and "[t]he other defendants are all officers and directors of Crosscode and now its successor, Codelogic." (Pl's Opp'n to Mot. to Dismiss at 5.) It is true that a defendant may consent to the exercise of general personal jurisdiction as a condition of performing some activity in the state. *Lehman Bros. Holdings Inc. v. LendingTree, LLC*, No. 20-cv-1351 (SRN/HB), 2021 WL 1087695, at *7 (D. Minn. Mar. 22, 2021). But personal jurisdiction is evaluated on an individual basis. *See, e.g.,*

*Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *NexGen HBM, Inc. v. ListReports, Inc.*, No. 16-cv-3143 (SRN/FLN), 2017 WL 4040808, at *10 (D. Minn. Sept. 12, 2017) (finding that corporate defendant's contacts with Minnesota could not be attributed to the individual defendants for purposes of establishing personal jurisdiction). Therefore, the actions of Crosscode and CodeLogic with respect to corporate registration cannot be attributed to the Individual Defendants, who have given no consent to the Court's general personal jurisdiction.

Applying the Eighth Circuit's minimum-contact factors most relevant to general personal jurisdiction here, the Court finds the "nature and quality" of the Individual Defendants' contacts with Minnesota have been non-existent or quite limited. *See Kaliannan*, 2 F.4th at 733. As to the "quantity of the contacts," *id.*, to the extent there are any contacts, they have been sporadic and random. Certainly, these limited contacts have not been so "continuous and systematic," as to render the Individual Defendants "essentially at home" in Minnesota. *See Daimler AG*, 571 U.S. at 127; *see also Johnson*, 614 F.3d at 795 (finding no general personal jurisdiction in Missouri where defendant "did business almost exclusively from her Colorado home, except for infrequent [business] trips to Missouri."); *Laver v. Peal*, 516 F. Supp. 3d 931, 934 (D. Minn. 2021) (finding allegations that the defendant fished and drove in Minnesota, visited Minneapolis and St. Paul a number of times, used Minnesota airports, and sent a letter regarding the defendant to the Minnesota Professional Responsibility Board were random and sporadic, and failed to establish general personal jurisdiction). As for the remaining factors—the state's interest

in providing a forum for its residents and the convenience of the parties, *Kaliannan*, 2 F.4th at 733—the Court finds them of little significance here.

Accordingly, for all the reasons set forth above, the Court finds that the Individual Defendants are not subject to general personal jurisdiction in Minnesota.

### b.    Specific Personal Jurisdiction

As noted earlier, specific personal jurisdiction requires "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State." *Bristol–Myers Squibb Co*., 137 S. Ct. at 1781 (citations and alterations omitted). The focus is on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014). The defendant's "suit-related conduct must create a substantial connection with the forum State." *Id*. at 284.

Regarding the relationship of the cause of action to the Individual Defendants' contacts, *see Kaliannan*, 2 F.4th at 733, Sharma argues the following in opposition to the Motion to Dismiss: (1) "all of the events or omissions giving rise to this claim occurred in this judicial district"; (2) both of Plaintiffs' companies KloudGaze, Inc. and Neoforma, Inc., have suffered losses "by the actions of the Defendants in the state of Minnesota"; (3) Crosscode has been operating as a Minnesota company as recently as January 2020, and "[t]he other defendants are all officers and directors of Crosscode and now its successor, Codelogic"; and (4) Defendant Fairbairn, supported by co-defendants Gandhi and Levy, submitted a false declaration regarding her contacts with Sharma. (Pl's Opp'n to Mot. to Dismiss at 5.)

None of these arguments supports a finding of specific personal jurisdiction. Although Sharma contends that "all of the events or omissions giving rise to this claim occurred in [this] judicial district," (*id.*), such a conclusory statement is insufficient to satisfy the due process concerns implicated by specific jurisdiction. *See Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1092 (8th Cir. 2008) (finding the allegation that "[defendant] had the duty to ensure the safe packing of the electrodes" was conclusory, and not enough to establish personal jurisdiction). Instead, Sharma must show, through affidavits and exhibits, *id.*, that the alleged misconduct at issue "arises out of" the Individual Defendants' contacts with the forum state. *Pangaea*, 647 F.3d at 746. He has not done so.

In addition, the Court is unpersuaded by Sharma's statement that harm to KloudGaze, Inc. and Neoforma, Inc. should confer jurisdiction, because this contention does not implicate any of the Individual Defendants' actions in Minnesota. (*See* Pl.'s Opp'n to Mot. to Dismiss at 5.)

With regard to Sharma's argument that Crosscode was a Minnesota company as recently as January of 2020, and the Individual Defendants are either former or current Crosscode or CodeLogic executives or board members, (*id.*; Compl. ¶¶ 29–36), "[t]he law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." *See Ark. Rice Growers Coop. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986). Here, the Individual Defendants' contacts with Minnesota are such that they could not have reasonably anticipated being haled into court here.

Sharma also asserts that Defendant Fairbairn submitted a false statement regarding her contacts with Sharma. (Pl.'s Opp'n to Mot. to Dismiss at 5.) He states that "this act of perjury [] itself is ground enough for the court to dismiss the Defendants['] motion." (*Id*. at 5–6.) In Fairbairn's original declaration, she stated, "I have never met, spoken with, or written to Plaintiff Aditya Sharma." (Fairbairn Decl. ¶ 3.) In support of Sharma's Motion for Rule 11 Sanctions, he submits a March 2020 email chain between him and Fairbairn, (Sharma Ex. 2 [Doc. No. 41-2] (Mar. 2020 Email Chain)), along with a declaration, in which Sharma states that he met Fairbairn on two occasions, and believes that she also participated in larger investment meetings in April 2019. (Sharma Decl. [Doc. No. 41-3] ¶¶ 2–4.) With respect to the email chain, Sharma initiated the communication on March 25, 2020, to which Fairbairn responded, and Sharma replied on the same day, following which, Fairbairn concluded the email chain on March 27, 2020. (Sharma Ex. 2 (Mar. 2020 Email Chain).)

In Fairbairn's Supplemental Declaration, she states that at the time of her initial declaration, she believed her statement to be true. (Fairbairn Supp'l Decl. ¶ 3.) However, Sharma's Declaration, along with the email chain, refreshed her recollection about any communications with Sharma. (*Id.*) Citing a lapse in memory, she now recalls participating in the March 2020 email chain with him. (*Id*.) Fairbairn also states that she has since searched her email accounts and found no other instances in which she wrote to Sharma. (*Id*. ¶ 4.) She also notes that she has a "faint recollection of participating in one phone call or videoconference in which Mr. Sharma and I were both participants." (*Id*. ¶ 5.)

Setting aside the question of alleged perjury for the moment—a proposition that the Court rejects, as explained in the context of Sharma's Rule 11 Motion for Sanctions, *infra* at II.C.2—when the Court considers these email communications and Fairbairn's possible participation in a larger videoconference or phone call, they fail to support the Court's exercise of specific personal jurisdiction over her. Even assuming that Sharma was in Minnesota at the time he initiated, received, or participated in these limited communications, they fail to show that Sharma's claims for mail fraud or breach of fiduciary duty "arise[] out of" Fairbairn's contacts with Minnesota. *Pangaea*, 647 F.3d at 746. In short, Sharma fails to show that these limited contacts were part of some broader effort by Fairbairn to create a connection with Minnesota.[4] *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 620 (8th Cir. 2021) (holding that isolated letters, emails, and calls directed to plaintiffs in the forum failed to support specific personal jurisdiction, as these were the only contacts with the forum, and were directed to the forum simply because the plaintiffs happened to reside there); *Pederson v. Frost*, 951 F.3d 977, 980 (8th Cir. 2020)

---

[4] And to the extent Sharma argues for purposes of general personal jurisdiction that Fairbairn's limited communications constitute "continuous and systematic" contacts such that she is "at home" in Minnesota, the Court disagrees. Two emails sent to a Minnesota resident and Fairbairn's possible participation in a conference call or videoconference at an unknown location do not support the exercise of general personal jurisdiction. *See Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015) (stating that "telephone calls, written communications, and even wire-transfers to and from a forum state do not create sufficient contacts to comport with due process such that a foreign corporation could reasonably anticipate being haled into court there.") (cleaned up).

(finding no specific jurisdiction where, among other things, there was no allegation that hundreds of phone calls and emails to the plaintiff in Minnesota "were part of some broader effort by the defendants to create a connection with Minnesota.").

Turning to the allegations in the Complaint, while Sharma alleges that he was improperly ousted from Crosscode's board of directors and the board was improperly reconstituted, (Compl. ¶¶ 28–36, 57–59, 61, 65, 71), he fails to connect such conduct with Minnesota, let alone the Individual Defendants' own affiliations with Minnesota. *See Walden*, 571 U.S. at 286.

Sharma also alleges that he has received mail at his Minnesota residence intended for Crosscode as part of a "mail fraud" scheme designed to unlawfully direct liens and bills intended for Crosscode to him. (Compl. ¶¶ 19–20, 96.) While Sharma contends that "Defendants" were responsible for this conduct, (*id*.), he does not allege facts showing actions by any of the Individual Defendants related to the purported mail fraud. Moreover, he fails to allege that such conduct was part of "some broader effort by the [Individual Defendants] to create a connection with Minnesota." *Pederson* 951 F.3d at 980.

In fact, the only suit-related contacts that any of them have with Minnesota is Sharma himself, as he is a Minnesota resident.[5] (Def.'s Mem. Supp. Mot. to Dismiss at 21.) Such a "contact" is insufficient to confer specific personal jurisdiction. *Pederson*, 951 F.3d at 980–81 (citing *Walden*, 571 U.S. at 283–84) (explaining that contacts are

---

[5]     Two of the Individual Defendants appear to lack any connection with Sharma, as they have never met, spoken with, or written to Sharma. (Cullinan Decl. ¶ 3; Levey Decl. ¶ 4.)

insufficient unless they reflect the defendants' "own affiliation with" the forum state); *see also Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) (holding that "scattered e-mails, phone calls, and a wire-transfer of money" do not, without more, create a "deliberate and substantial connection" with the forum state (internal quotation marks and citation omitted)).

To the extent Sharma argues that specific personal jurisdiction is proper based on the *Calder* "effects test" because the Individual Defendants allegedly committed an intentional tort, causing him to feel the effect of the harm in Minnesota, the Court disagrees. In *Calder*, the Supreme Court held that personal jurisdiction can exist over a nonresident defendant who commits an intentional tort if the effect of the tort is felt in the forum state. 465 U.S. 783 (1984). The Eighth Circuit narrowly construes the *Calder* effects test, holding that "absent additional contacts, mere effects in the forum state are insufficient to confer personal jurisdiction." *Johnson*, 614 F.3d at 794. For *Calder* to apply, the defendant's intentional acts must be expressly aimed at the forum state, and cause the brunt of the harm, which the defendant knew was likely to be suffered in the forum state. *Johnson*, 614 F.3d at 796. Here, nothing shows that any of the Individual Defendants targeted Sharma with allegedly tortious conduct, nor is there any evidence that they expressly aimed their conduct at Minnesota, or knew that the brunt of the resulting harm would be felt here.

In addition, under *Calder*, "the relationship must arise out of contacts that the defendant has created with the forum state," with the focus on "'the defendant's contacts and conduct with the forum state *itself*'"—"'not the defendant's contacts with people who

24

happen to reside there.'"  *Pederson*, 951 F.3d at 981 (quoting *Whaley*, 946 F.3d at 451).

Regardless of Sharma's contacts with Minnesota, those contacts "'cannot be decisive in

determining whether [the Individual Defendants'] due process rights are violated.'"  *Id.*

(quoting *Walden*, 571 U.S. at 285).

For all of the foregoing reasons, the Court finds that there is no specific personal

jurisdiction over the Individual Defendants.  Accordingly, Defendants' Motion to Dismiss

is granted on this basis.

### B.    Dismissal for Failure to State a Claim Under Rule 12(b)(6)

Even if the Court had subject matter jurisdiction and the exercise of personal

jurisdiction over the Individual Defendants was proper, Defendants also move to dismiss

the Complaint pursuant to Rule 12(b)(6), arguing that Sharma fails to state a claim upon

which relief can be granted.

### 1.    Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the

facts alleged in the complaint as true, and views those allegations in the light most favorable

to the plaintiff.  *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013).

However, the Court need not accept as true wholly conclusory allegations or legal

conclusions couched as factual allegations.  *Id.*  To survive a motion to dismiss, a complaint

must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl.

Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain

"detailed factual allegations," it must contain facts with enough specificity "to raise a right

to relief above the speculative level." *Id.* at 555.  "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements," are insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss.  *See* Fed. R. Civ. P. 12(d).  But courts may consider materials that are part of the public record, such as orders and items appearing in the record of a case, as well as materials that are embraced by the pleadings.  *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015).  Here, the Court properly considers the allegations in the Complaint, along with public records filed in the following legal proceedings:  (1) *Sharma v. Crosscode Inc.*, No. 20-cv-436 (PJS/TNL) (D. Minn. 2020); (2) *Crosscode Inc. v. Sharma*, No. 3:20-cv-104-VC (N.D. Cal. 2020); and  (3) *In re: Crosscode Inc., Debtor*, No. 20-30383 (Bankr. N.D. Cal. 2020).  Not only is consideration of such records proper as they are part of the public record, the pleadings also "embrace" them, as the Complaint frequently references the prior legal proceedings.  (*See, e.g.*, Compl. ¶¶ 8–14, 48–51, 61–72.)

## 2.   Effect of Settlement Agreement & Bankruptcy Court's Approval of the Plan

Defendants contend that Sharma cannot state a claim under Rule 12(b)(6) because his claims are barred by the Settlement Agreement, as well as certain Bankruptcy Court orders that approved the Settlement Plan and confirmed Crosscode's Chapter 11 Plan.  (Defs.' Mem. Supp. Mot. to Dismiss at 22–25.)   Specifically, they argue that any claims based on events that occurred before September 12, 2020 fail as a matter of law due to the express terms of the Settlement Agreement and the Bankruptcy Court's approval of it.  (*Id*.)  Sharma, however, maintains that his claims for fraud and misrepresentation concern events

that occurred after September 12, 2020 and December 10, 2020.  (Pl.'s Opp'n to Mot. to Dismiss at 6–7.)  Thus, he argues, the terms of the Settlement Agreement and Bankruptcy Court orders do not bar his claims here.  (*Id.*)

As noted earlier, in Crosscode's bankruptcy proceedings, Sharma, along with his wife, voluntarily settled all present and future claims "from the beginning of time" through the date of the "Bankruptcy Approval Motion Final Order Date" against Crosscode, its current and former directors, officers, employees, and successors.  (McCalmont Decl., Ex. D (Mot. to Approve) at 18.)

In addition, the Settlement Agreement contained a separate provision applicable only to Mr. Sharma, which stated, in relevant part:

> [O]n the Bankruptcy Approval Motion Final Order Date, Mr. Sharma, . . . agrees to release and forever discharge the [Debtor and its current and former directors, officers, employees, successors, and assigns . . . ] from any and all debts, demands, actions, causes of action, contracts, claims, suits, damages and liabilities *of any kind whatsoever*, in law or in equity, *whether known or unknown*, anticipated or unanticipated, regarding any matter *arising on or before* the Bankruptcy Approval Motion Final Order Date, including, but not limited to, all claims regarding Mr. Sharma's employment at, or termination of employment from [Crosscode],  including . . . any claim for equitable relief or recovery of punitive, compensatory, or other damages or monies (including claims as to taxes), attorneys' fees, *any tort (including without limitation, fraud*, fraudulent inducement, intentional misrepresentation or negligent misrepresentation.

(*Id.*) (emphasis added).  The Bankruptcy Court approved the settlement on August 28, 2020, which made the releases effective as of September 12, 2020, when the decision was no longer appealable.  (*Id.*, Ex. D (Mot. to Approve) at 23).)

Shortly thereafter, in November 2020, the Bankruptcy Court issued findings of fact and confirmed Crosscode's Chapter 11 Reorganization Plan.  (McCalmont Decl., Ex. G

(Findings of Fact & Confirm. Order).)  Upon the funding of the Plan on its effective date of December 10, 2020, the Bankruptcy Court released all claims against Crosscode and CodeLogic, including claims related to Crosscode's bankruptcy or its liabilities and "causes of action of any nature whatsoever," and barred anyone from pursuing such claims against Crosscode and CodeLogic that arose prior to December 10, 2020.  (McCalmont Decl., Ex. G (Findings of Fact & Confirm. Order) ¶¶ 18–19; *see also id.*, Ex. F (Third Am. Plan) § 5.1 (stating that all persons are barred from asserting against Crosscode and Reorganized Crosscode any cause of action that occurred or existed prior to the Plan's effective date).)

Here, the factual allegations in Sharma's Complaint refer to a number of events that precede September 12, 2020 and December 10, 2020.  (*See, e.g.*, Compl. ¶¶ 1–19.)  With respect to at least the first three of  Sharma's claims for relief, he alleges that in March 2020, he received an IRS notice advising that the IRS was placing a lien on his property due to taxes owed by "Defendant."  (*Id.* ¶¶ 78, 83, 88.)  He contends that the alleged IRS lien constitutes evidence that Defendants filed an unspecified IRS form, using Sharma's home address as their official place of business, with "clear intent to defraud."  (*Id.* ¶ 18.)

In addition to the entirely speculative nature of such allegations, the plain terms of the Settlement Agreement and the Bankruptcy Court orders approving the settlement and confirming and effecting the execution of the Plan preclude Sharma from asserting any claims against Defendants that arose prior to September 12, 2020.  Granted, some of Sharma's allegations appear to concern events occurring *after* that time.  (*See, e.g., id.* ¶¶ 20–23, 79–79, 84–85, 88–89.)  However, the portions of his claims that refer to or rely on

events occurring before September 12, 2020, (*id.* ¶¶ 1–19, 78, 83, 88), fail as a matter of law.  This includes his allegations concerning the March 2020 IRS notice.  (*Id.* ¶¶ 18–19, 78, 83, 88.)

Accordingly, the Court grants Defendants' Motion to Dismiss with respect to the allegations found in ¶¶ 1–19, 78, 83, and 88 of the Complaint.  Because these allegations fail as a matter of law due to several provisions in the Settlement Agreement to which Sharma freely agreed, as well as related Bankruptcy Court orders, no amount of repleading could salvage them.  Consequently, these allegations (*id.* ¶¶ 1–19, 78, 83, 88) are dismissed with prejudice and cannot form of the basis for any of Plaintiff's claims.  *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) ("It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile.").

### 3.    No Private Civil Cause of Action for Mail Fraud (Counts 1, 2, and 3)

Defendants argue that Counts 1, 2, and 3 of the Complaint should be dismissed because, as a matter of law, Sharma cannot institute a criminal action for mail fraud under 18 U.S.C. § 1341.  (Def.'s Mem. Supp. Mot. to Dismiss at 25.)

It is well established that a private citizen may not commence a federal criminal prosecution by filing a civil complaint.  *Starway v. Zalasky*, No. 01-cv-1929 (RHK/JMM), 2002 U.S. Dist. LEXIS 3934, at *5-6 (D. Minn. Mar. 7, 2002) (recognizing "[c]riminal statutes can be enforced only by the proper authorities of the United States Government, such as United States Attorneys" and dismissing plaintiff's request for criminal prosecution

under Rule 12(b)(6)).  This is essentially a question of standing—the Supreme Court has long recognized that a private citizen has no judicially cognizable interest in the prosecution of another.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  The Eighth Circuit has likewise noted that "whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion."  *Parkhurst v. Tabor*, 569 F.3d 861, 867 (8th Cir. 2009) (quoting *United States v. Batchelder*, 442 U.S. 114, 124 (1979)).  Because he is a private citizen, the Court cannot grant Sharma's request to initiate an action and levy criminal penalties against Defendants for alleged violations of 18 U.S.C. § 1341.

Furthermore, while some federal statutes imply a private right of action, that is not the case here.  The Eighth Circuit has determined that there is no implied private right of action in the federal mail fraud statute.  *Wisdom v. First Midwest Bank*, 167 F.3d 402, 408 (8th Cir. 1999).  Consequently, because this civil action provides no means to grant the relief that Sharma requests under 18 U.S.C. § 1341, the Court dismisses Counts 1, 2, and 3 of the Complaint.  Because these claims fail as a matter of law and any repleading would be futile, dismissal is with prejudice.  *Knowles*, 2 F.4th at 758.

### 4.     Declaratory Judgment Claim Directed at Non-Parties (Count 4)

Defendants also move to dismiss Count 4 of the Complaint, in which Sharma asserts a claim for declaratory relief against three non-parties, (Defendants' prior legal counsel), "Friedman, Stoel Rives and Maslon."  (Compl., Count 4 at 23.)  He alleges that Defendants "issued a clear directive to their attorneys" to "fix" Sharma so he would no longer pose a business threat to them.  (*Id*. ¶ 92.)  Sharma seeks to obtain a declaration that these non-

parties committed crimes, or to obtain an order from the Court that directs the U.S. Attorney's Office to prosecute them for "manipulating the US legal system for illegal gains" and "indulging in fraudulent practices which goes against the ethos of practicing law." (*Id*. ¶¶ 92–93.)

Because Count 4 seeks relief that this Court cannot provide (against three non-parties over whom the Court lacks jurisdiction), Defendants' Motion to Dismiss is granted. Again, as discussed above, the U.S. Attorney's Office can enforce criminal statutes, but this Court cannot. *See, e.g.*, *Starway*, 2002 U.S. Dist. LEXIS 3934, at *5-6. Therefore, Sharma's claim in Count 4 fails as a matter of law, and no amount of repleading could cure the fact that this Court cannot provide the requested relief. Accordingly, the Court dismisses Count 4 with prejudice. *Knowles*, 2 F.4th at 758.

### 5.      Breach of Fiduciary Duty Claim (Count 5)

In Count 5, Sharma asserts a claim for breach of fiduciary duty against Defendants Cullinan, Clifford, Archer, Fairbairn, Levy, Gandhi and Wunderle. He asserts that in their roles as directors or officers of Crosscode and its successor CodeLogic, they breached the duties of care, loyalty, and good faith owed to him as a stockholder. (Compl. ¶ 95.) Specifically, he contends that they "orchestrated a plan to commit 'Mail Fraud,'" in violation of the "governing corporate documents and applicable corporate law." (*Id*. ¶ 96.)

Defendants move to dismiss this claim for two primary reasons. First, because Sharma premises his claim for breach of fiduciary duty on the Defendants' alleged mail fraud, Defendants assert that it fails as a matter of law because there is no cognizable private civil cause of action for mail fraud. Second, Defendants argue that Sharma fails to

meet the heightened pleading standard under Federal Rule of Civil Procedure 9(b) for claims of fraud.[6]

The Court agrees with Defendants that because there is no private civil cause of action for mail fraud, *supra* at II.B.3, Sharma's mail fraud allegations cannot be repackaged into a claim for breach of fiduciary duty. Accordingly, Count 5 fails as a matter of law.

Furthermore, the claim also fails to meet Rule 9(b)'s pleading standards, which require that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Sharma fails to sufficiently plead "the who, what, when, where and how" necessary to state a plausible claim for fraud. *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 995 (8th Cir. 2007) (stating that Rule 9(b) requires a party to plead "the who, what, when, where and how" of the alleged fraud). Among other things, Sharma does not adequately identify which Defendants devised the mail fraud scheme and does not describe the actions taken by each individual in furtherance of the alleged scheme. "Shotgun-style allegations of wrongdoing by all the [] Defendants generally, in a group pleading fashion does not satisfy Rule 9(b)." *Quintero Cmty. Ass'n Inc. v. FDIC*, 792 F.3d 1002, 1010 (8th Cir. 2015)

---

[6]     Additionally, Defendants argue that this claim fails because Sharma is no longer a Crosscode shareholder to whom any fiduciary duty is owed, as the Bankruptcy Court filings demonstrate, and he has never claimed to be a CodeLogic shareholder. (Defs.' Mem. Supp. Mot. to Dismiss at 29–30.) They further contend that pursuant to the terms of the certificates of incorporation for Crosscode and CodeLogic, any claim for breach of fiduciary duty must be brought in Delaware—the companies' state of incorporation. (*Id.* at 30 n.4.) Because the Court finds that Count 5 fails for the two primary reasons discussed above, the Court need not consider these additional arguments.

(internal quotation marks omitted).  Though Sharma lists Defendants Cullinan, Clifford, Archer, Fairbairn, Levy, Gandhi and Wunderle in the caption of Count 4, in the substantive allegations for the claim, he fails to allege the particular role that any of them performed. Instead, he merely refers to "Defendants."   (Compl. ¶¶ 95–97.)

Nor does Sharma adequately allege the necessary "when," "where," and "how" details of the alleged fraud.  His claim lacks allegations regarding when the Defendants decided to commit mail fraud, where that decision was made, and the nature of the plan. While Sharma describes receiving various pieces of mail at his residence addressed to "the Defendant," those occurrences only address the consequences of the alleged mail fraud, not the manner in which it was accomplished.  In sum, the Court concludes that Sharma's allegations fail to meet the requirements of Rule 9(b) because they are vague and lack particularized factual information.

Sometimes, claims subject to dismissal under Rule 9(b) may be amended, and therefore, dismissed without prejudice.  But here, in addition to the Rule 9(b) pleading deficiencies, Count 5 is fundamentally flawed as a matter of law because the underlying allegations of civil mail fraud fail to state a claim for relief.  *See supra* at II.B.3. Accordingly, any effort to replead this claim would be futile.  The Court therefore grants Defendants' motion with respect to Count 5 and dismisses Sharma's claim for breach of fiduciary duty with prejudice.

6.      **Striking Portions of Complaint as Scandalous, Impertinent, and Immaterial**

Defendants also request that the Court strike most of the Complaint as "scandalous, impertinent, and immaterial." (Defs.' Mem. Supp. Mot. to Dismiss at 31.) They contend that most of the factual allegations in the Complaint have nothing to do with Sharma's claims for relief, that he repeats allegations that were disputed in prior litigation and resolved by the final Bankruptcy Court orders, and that certain allegations are intentionally salacious and portray Defendants as "master fraudsters", who engage in "mafiosi conduct" and maintain "criminal affiliation[s]" and "criminal connections." (*Id.*) (citing Compl. ¶¶ 1–9, 11–17, 40–75, 91–93).

Indeed, courts may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Redundant allegations needlessly repeat other averments in the pleading, *Brodkorb v. Minnesota*, No. 12-cv-1958 (SRN/AJB), 2013 WL 588231, at *16 (D. Minn. Feb. 13, 2013), while immaterial or impertinent allegations are irrelevant "to the resolution of the issue at hand." *McLafferty v. Safeco Ins. Co. of Ind.*, No. 14-cv-564 (DSD/SER), 2014 WL 2009086, at *3 (D. Minn. May 16, 2014) (citing *Kay v. Sunbeam Prods., Inc.*, No. 2:09cv–4065, 2009 WL 1664624, at *1 (W.D. Mo. June 15, 2009)). Courts consider allegations scandalous if they are "'unnecessarily' derogatory or prejudicial." *Chavez-Nelson v. Dayton*, No. 17-CV-4098 (PJS/SER), 2018 WL 10289738, at *1 (D. Minn. Feb. 1, 2018), *report and recommendation adopted*, 17-CV-4098 (PJS/SER), 2018 WL 1122378 (D. Minn. Mar. 1, 2018). While "[j]udges enjoy liberal discretion to strike

34

pleadings under Rule 12(f)," it is "an extreme and disfavored measure." *BJC Health Sys.*
*v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted).

While many of the allegations that Defendants identify appear to be redundant, immaterial, and scandalous, the Court declines to strike them. The Court is mindful of the fact that Sharma is self-represented. While pro se plaintiffs are not held to the same standard of pleading as attorneys, *see Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), pro se plaintiffs are nevertheless bound by applicable procedural and substantive law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law."); *Farnsworth v. City of Kansas City, Mo*., 863 F.2d 33, 34 (8th Cir. 1988) ("Pro se litigants are not excused from complying with court orders or substantive and procedural law."). The Court's denial of this portion of Defendants' motion does not mean that the allegations in question are appropriate. However, because the Court is granting Defendants' Motion to Dismiss in all other respects, and because motions to strike are generally disfavored, the Court denies Defendants' request to strike portions of the Complaint.

### C.   Sanctions

As noted earlier, Defendants move for Rule 11 sanctions against Sharma in the form of monetary sanctions. They also seek an order declaring Sharma a vexatious litigant and requiring him to obtain approval prior to filing any future action against them. (Defs.' Mem. Supp. Sanctions at 18–22.) Sharma also moves for Rule 11 sanctions against Defendants, based primarily on his argument that Defendant Fairbairn has knowingly

submitted false declarations and has committed perjury, facilitated by counsel.  (Pl.'s Mem.

Supp. Sanctions at 2–9.)

### 1.    Defendants' Rule 11 Motion

When submitting a pleading, motion, or other paper to the court, Rule 11 requires

an attorney or unrepresented party to certify the following with regard to the filing:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  Sanctions may be warranted when an attorney, law firm, or party

violates these requirements.  Fed. R. Civ. P. 11(c)(1).

While the court construes motions by pro se litigants liberally and in their favor, *see*

*Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (*citing Haines v. Kerner*, 404 U.S. 519, 520-

21 (1972)), pro se litigants are subject to the same Rule 11 standards as licensed attorneys.

*Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993).  Courts evaluate Rule 11 motions

using a standard of objective reasonableness to assess the litigant's conduct, considering

factors such as "the wrongdoer's history, the severity of the violation, and the degree to

which malice or bad faith contributed to the violation." *Bus. Guides v. Chromatic*

*Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991*); Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995).

"The court approaches the imposition of sanctions with caution." *Robinson Rubber Prods. Co., Inc. v. Hennepin Cty.*, 12 F. Supp. 2d 975, 981 (D. Minn. 1998) (*citing O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 (8th Cir. 1987)). The purpose of sanctions under Rule 11 is to "deter improper behavior, not to compensate the victims of it or punish the offender." *Hanson v. Loparex, Inc.*, No. 09-cv-1070 (SRN/FLN), 2011 U.S. Dist. LEXIS 91190, at *17 (D. Minn. Aug. 15, 2011) (quoting 5A Charles Alan Wright and Arthur Miller, *Federal Practice and Procedure* § 1336.3, at 689 (3d ed. 2004)).

Defendants argue that Sharma's Complaint violates Rule 11(b), subsections 1–3 for several reasons. First, they allege it is "littered with allegations that have no evidentiary support" as well as "outright falsehoods," in violation of Rule 11(b)(3). (Defs.' Mem. Supp. Sanctions at 11). As examples of such false allegations, Defendants point to Sharma's statements alleging an interest in Crosscode, the existence of a "lien" on his residence, and the harassment of Indian national Ajay Singh. (*Id.* at 11–14.) Next, Defendants argue that Sharma filed his Complaint for no other purpose than to harass them, as demonstrated by the "scandalous and immaterial" accusations contained therein and the fact that the Complaint contains allegations resolved by the Bankruptcy Court. (*Id.* at 14–16.) Finally, Defendants argue that Sharma's Complaint is frivolous because it is based on the federal criminal mail fraud statute, 18 U.S.C. § 1341, for which there is no private right of action, and because he lacks any legal right to relief in the form of criminal prosecution of Defendants' non-party attorneys. (*Id.*) As a consequence for these alleged Rule 11

violations, Defendants request monetary sanctions and an injunction preventing Sharma from filing civil suit against them in this District without first obtaining leave of court.  (*Id.* at 22–23.)

Defendants' contentions have merit.  This is the second action Sharma has instigated in this District, and the fourth in which he has participated, to litigate grievances stemming from the same basic underlying incident: his removal from Crosscode's Board.  Each court that has examined the merits of Sharma's contentions has found them baseless, supported only by possibly fabricated evidence.  This Court has already admonished Sharma for knowingly relying upon false evidence, including his allegation that Defendants harassed and threatened Indian national Ajay Singh.   (McCalmont Decl., Ex. B (*Sharma v. Crosscode, Inc.*, No. 20-cv-436 (PJS/TNL), (D. Minn. Feb. 19, 2020 Order) at 15 n.4); *see also id.*, Ex. C (*Crosscode Inc. v. Sharma*, No. 3:20-cv-00104-VC (N.D. Cal. Mar. 3, 2020 Order) at 5–6 (N.D. Cal. Mar. 3, 2020).)  Yet here, Sharma continues to assert the same allegations about the alleged harassment of Singh.  (Compl. ¶¶ 66–70.)  In addition, the settlement reached between Crosscode and Sharma, approved in a final and binding order by the Bankruptcy Court, should have brought a conclusive resolution to this dispute.

Nevertheless, the Court declines to award monetary sanctions because the Court is dismissing all of Sharma's claims with prejudice.  This dismissal with prejudice should sufficiently deter Sharma from filing additional actions under similar legal theories.  The Court strongly cautions Sharma that further efforts to file a new lawsuit in any way related to his previous allegations against Defendants may very well subject him to Rule 11

monetary sanctions from this Court.  Accordingly, the portion of Defendants' motion seeking monetary sanctions is denied.

However, while the Court declines to award monetary sanctions, the Court grants the portion of Defendants' motion that seeks to enjoin him from filing any civil action in this District Court against Crosscode, CodeLogic, or any affiliated parties, including (but not limited to) current and former officers, directors, employees, counsel, agents, bankers, and investors, without first obtaining leave of Court.   Sharma has brought multiple actions against Defendants, involving the same or closely related allegations, most of which appear to be baseless.  He has had "ample opportunity to allege or argue all issues and related matters" concerning Defendants in California and Minnesota, and "yet, he continues to drag Defendant[s] back into court to continue litigating [the same issues]."  *Green v. Chamberlain Home Owners Assoc.*, No. 20-cv-798 (JRT/BRT), 2021 WL 505321, at *2. In short, Sharma has abused the judicial process to harass Defendants with non-meritorious litigation.  And even though Sharma is bound by the broad language of the Settlement Agreement precluding him from suing Defendants for claims arising before the agreement's effective date, he has violated it.   In fact, Sharma intends to "fight [this] to the end" and "plan[s] to initiate another action [against] the defendants based upon new information."[7]  (Notice at 1.)

---

[7]     Sharma captioned the document containing these statements a "Notice of Continuance" [Doc. No. 45].  Based on his statements in the Notice, the Court construes his use of "continuance" to mean that Sharma otherwise intends to continue to pursue this litigation, as opposed to a request for a continuance, i.e., an extension of time.  If the

Defendants are entitled to relief from never-ending, vexatious litigation, and "federal courts have a clear obligation to exercise its authority to protect litigants from such behavior." *In re Tyler*, 839 F.2d 1290, 1293 (8th Cir. 1988). Thus, courts may, in their discretion, place reasonable filing restrictions or conditions on any litigant who "files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *Id*. (holding that inmate's repeated abuse of judicial process by filing numerous meritless lawsuits warranted the imposition of an order limiting his filings and prescribing certain conditions precedent to filing future lawsuits) (citations omitted); *see also Sassower v. Carlson*, 930 F.2d 583, 584–85 (8th Cir. 1991) (affirming injunction that precluded plaintiff with a history of frivolous and vexatious litigation from filing any civil action in the United States District Court for the District of Minnesota without first obtaining leave of court); *Green*, 2021 WL 505321, at *2 (adopting recommendation to enjoin plaintiff from filing any further actions related to the subject of the dispute in question in the District of Minnesota against defendant, its board members, its property manages, and its legal counsel).

For all of the foregoing reasons, Defendants' motion for sanctions under Rule 11 is denied in part as to monetary sanctions, and granted in part as to the requirement that Sharma first obtain Court approval prior to filing any action in the United States District Court for the District of Minnesota against Defendants, or any affiliated parties, including

---

Court's interpretation is incorrect, to the extent Sharma seeks any extension of time, his request is denied.

(but not limited to) current and former officers, directors, employees, counsel, agents, bankers, and investors. He is enjoined from filing any such actions without first obtaining leave of court.

### 2. Plaintiff's Rule 11 Motion

Sharma likewise moves for Rule 11 sanctions against Defendants. Sharma alleges Defendant Fairbairn has committed perjury by submitting a false declaration and failing to adequately correct it, and that Fairbairn's attorneys have committed perjury by aiding this conduct and by making false statements during the bankruptcy proceeding in California. (Pl.'s Mem. Supp. Sanctions at 2-5). Additionally, he alleges that Fairbairn's attorneys have violated their oaths as officers of the court. (*Id*. at 5-7). Sharma seeks the criminal prosecution of Fairbairn and her attorneys, as well as the attorneys' disqualification and disbarment.

The Court finds that Sharma's motion is without merit. While Rule 11 imposes a "duty of candor" upon attorneys in their filings, attorneys who make a good faith correction after an error is brought to their attention are protected against sanctions. *Murphy v. Aurora Loan Servs., LLC*, 859 F. Supp. 2d 1016, 1020 (D. Minn. 2012) (quoting Fed. R. Civ. P. 11(b) and (c) and advisory committee's note, 1993 Amendments). Although Fairbairn subsequently learned that her prior statement about never having written to Sharma was factually incorrect, she believed the statement to be true at the time she made it. (Supp'l Fairbairn Decl. ¶¶ 3–4.) Moreover, when her memory was refreshed by Sharma's email exhibits, she promptly corrected her prior statement, citing her mistaken memory. (*Id*. ¶ 3.) To the extent Plaintiff asserts that the alleged perjury continues because the error was

41

not sufficiently corrected, the Court disagrees.  Fairbairn and defense counsel quickly made a good faith correction after the error was brought to their attention.  Accordingly, the Court finds that Rule 11 sanctions are wholly unwarranted against Defendants and their counsel.

In addition, to the extent that Sharma seeks relief under Rule 11 in the form of the criminal prosecution Fairbairn and her attorneys, as discussed above in the Court's analysis of Defendants' Rule 12(b)(6) arguments, *supra* at II.B.3–5, such relief is not permissible, nor is it warranted.

Finally, even if any of this conduct were sanctionable, Sharma has failed to comply with the procedural requirements of Rule 11.  Rule 11(c)(2) requires litigants to separately notify the opposing party of a motion for sanctions 21 days prior to filing it, providing an opportunity for the opposing party to correct their conduct.  Fed. R. Civ. P. 11(c)(2).  The Court will not impose sanctions, regardless of the conduct at issue, when the safe harbor provision has been ignored.  *See, e.g.*, *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003).

Due to its substantive and procedural deficiencies, the Court therefore denies Sharma's Motion for Sanctions.

## III.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that

1.    Defendants' Motion to Dismiss [Doc. No. 6] is **GRANTED**.

2.    The Complaint [Doc. No. 1] is **DISMISSED WITH PREJUDICE**.

3.    Defendants' Motion for Rule 11 Sanctions/Declaring Plaintiff a Vexatious Litigant [Doc. No. 32] is **GRANTED IN PART** as to the requirement that Sharma must first obtain leave of the United States District Court for the District of Minnesota prior to filing any civil action in the United States District Court for the District of Minnesota against Crosscode, CodeLogic, or any affiliated parties, including (but not limited to) current and former officers, directors, employees, counsel, agents, bankers, and investors, and **DENIED IN PART** as to monetary sanctions.

4.    Plaintiff's Motion for Sanctions and Demand for Criminal Prosecution [Doc. No. 41] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 17, 2022                    s/Susan Richard Nelson
                                         SUSAN RICHARD NELSON
                                         United States District Judge